

Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
601 Marshall St
Redwood City, CA 94063

goodwinlaw.com
+1 650 752-3100

July 29, 2024

**VIA ECF**

Hon. Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re**:   *SecurityScorecard, Inc. v. Safe Securities, Inc.*, No. 1:24-cv-04240-ER – response to Plaintiff's second motion for emergency relief (ECF No. 72)

Dear Judge Ramos:

We write on behalf of Defendant Safe Securities, Inc. ("SAFE") in response to SecurityScorecard, Inc.'s second motion for emergency relief (ECF No. 72).  Plaintiff's motion should be denied.  To the extent the Court requires more briefing, SAFE respectfully requests that the Court deny the motion for a temporary restraining order, and allow the parties to brief any remaining questions on preliminary relief over the course of a standard briefing schedule.

Plaintiff's motion is untimely and unwarranted.  Viewed even most generously, Plaintiff's maneuver is a sharp practice—ambushing SAFE with a second emergency motion, just six weeks after Plaintiff's first emergency motion was denied on June 13, 2024 (and nearly eight weeks after Plaintiff filed its complaint), to seek the same relief it was denied already.

Recently, the parties began discussions on various administrative matters related to the case, and Plaintiff made no mention of this motion.  Rather than discuss its concerns as part of these discussions, Plaintiff submitted *over 2,000 pages* in support of a so-called "emergency" motion filed after the close of business on a Friday night, leaving SAFE just days to respond.  Plaintiff's motion also was filed while two key members of SAFE's litigation team are traveling internationally.

Plaintiff's motion is faulty for a number of reasons.  Most notably, Plaintiff's motion fails to show any irreparable harm or any colorable threat that SAFE will access Plaintiff's website in the future.  Had Plaintiff engaged in a good faith discussion, it would have learned that SAFE is willing to agree to:

1.  Not access SSC's customer platform except as necessary to defend the issues in this case; and

**GOODWIN**

July 29, 2024
Page 2

    2.   Search for and sequester all copies of any "digital footprints" specifically identified by SAFE as being downloaded from SSC's customer platform.[1]

SAFE agrees to these conditions notwithstanding that specific relief is not the conventional remedy for breach of contract (*see Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991)), without conceding that they are warranted, and while expressly reserving the right to argue that enforcement of Plaintiff's User Agreement contravenes principles of contract and competition law.

The remaining relief sought by Plaintiff—prohibiting SAFE from "disclosing or using" an undefined set of "Confidential Information"[2] from SSC's platform—is not appropriate. The proposed relief violates the specificity requirements of Rule 65(d). This same point was already argued and presented to the Court on Plaintiff's first motion for emergency relief.[3] The remaining relief also is not necessary to prevent any harm to Plaintiff, much less irreparable harm.

    A.   **Plaintiff's second emergency motion repackages the same arguments rejected by the Court six weeks ago in Plaintiff's first emergency motion, and seeks the same relief**

On June 13, 2024, the Court denied Plaintiff's first motion for emergency relief. *See* ECF No. 78-1 (June 13, 2024 H'rg Tr.) at 78:2-80:6. With that motion, Plaintiff sought to leverage trade secret law to prevent SAFE and individual defendant Mary Polyakova from "using or disclosing" "the Master East List, the CISO Prospect Lists, or any other SSC trade secrets or confidential or proprietary information." ECF No. 11 at 25. Plaintiff defined this subject matter as "Confidential Information." ECF No. 1 ¶ 17.

---

[1] Despite filing over 2000 pages, Plaintiff has not identified any specifics of these so-called "Digital Footprints," such as copies of the materials it claims were downloaded. The individuals associated with the SAFE email addresses Plaintiff identified left SAFE well before the complaint was filed in this action.

[2] Plaintiff defined "Confidential Information" as "the Master East List, the CISO Prospect Lists, or any other SSC trade secrets or confidential or proprietary information." *See* ECF No. 1 ¶ 17. The two lists are sequestered and not at issue. What remains is only generically described as "any other SSC trade secrets or confidential or proprietary information." In Plaintiff's prior briefing, it defined "trade secrets or confidential or proprietary information" as "all inventions and all other business, technical, and financial information (including, without limitation, the identity of any information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to the Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence." ECF No. 44 at 10 n.13. This definition makes no sense here. In any event, it is circular, with no guidance on what information is at issue.

[3] As discussed herein, Plaintiff's arguments were already rejected. Plaintiff's "emergency" also needlessly burdens SAFE and the Court. This is part of an effort to abuse the litigation process to bully a blossoming competitor. When Plaintiff's motion is denied, SAFE intends to move, pursuant to 28 U.S.C. § 1927, for sanctions against Plaintiff's counsel for creating this false and unnecessary "emergency." *See Rock v. Enfants Riches Deprimes, LLC*, No. 17-cv-2618-ALC, 2020 U.S. Dist. LEXIS 15081, at *6-7 (Jan. 29. 2020) (sanctioning attorney for frivolous filing).



July 29, 2024
Page 3


In response to Plaintiff's first emergency motion, SAFE explained that it had no interest in either the "Master East List" or "the CISO Prospect Lists" and would sequester these with a forensic neutral for the duration of the case. ECF No. 32 at 5.

Nonetheless, Plaintiff—revealing that its true motive is to unfairly hamper SAFE's ability to lawfully compete—pushed forward, asking the Court to enjoin SAFE from "using or disclosing" an undefined set of "trade secrets or confidential or proprietary information." *See* ECF No. 44 at 5, 9-10 (Plaintiff's reply for its first emergency motion arguing, against the weight of binding Second Circuit authority, that the Court can enjoin use of an undefined set of information).

At the hearing, it became clear why Plaintiff refused to identify any specific information within the undefined set of "confidential information": all of the information Plaintiff sought to claim was either *publicly available or derived from publicly available information*, as the Court recognized. *See* ECF No. 78-1 at 4:23-7:25 (discussion between Plaintiff and the Court revealing that Plaintiff's information concerns 12 million non-client third parties, which is sourced from the internet and provided to anyone who buys or signs up for a free "slot" on Plaintiff's platform). Indeed, as Plaintiff's own User Agreement states, Plaintiff's services are provided "***using solely*** outside-in, ***publicly available data*** that is collected and ultimately displayed in our [user interface] via our proprietary technology" and "[t]he cybersecurity ratings provided by the Services ***are based only on information from publicly available sources*** . . . ." *See* ECF No. 1-1 at 2 (emphasis added).

It was also revealed that Plaintiff's theories of harm were too speculative to support relief. *See* ECF No. 78-1 at 53:6-54:3. Among these speculative theories was a hypothetical chain of events whereby Plaintiff claimed SAFE would (1) learn about Plaintiff's offerings, (2) somehow leverage that information, (3) to improve SAFE's own offerings, and (4) theoretically attract customers away from Plaintiff. *See* ECF No. 44 at 6-7. Plaintiff also claimed that a specific customer, Veralto, had switched from Plaintiff to SAFE, but that was revealed as a misrepresentation. *See* ECF No. 32 at 8. Ultimately, the Court determined that Plaintiff's theory of hypothetical harm was too speculative to qualify as the type of immediate, imminent, and irreparable harm required for preliminary relief. *See* ECF No. 78-1 at 53:6-54:3 (the Court noting that Plaintiff's theory of harm "appear[ed] to be speculation").

The Court ordered the parties to confer on SAFE's agreement to sequester the lists at issue and denied Plaintiff's motion. ECF No. 78-1 at 78:2-80:6.

Undeterred, Plaintiff now seeks the same relief again—preventing use and disclosure of the same undefined set of "Confidential Information"—based on the same speculative theory of harm. *Compare* ECF No. 44 at 6-7, 9-10, *with* ECF No. 73 at 17, 19. The only real difference is that Plaintiff previously relied on trade secret law. Now, Plaintiff relies on contract law, which actually presents a weaker case because a breach of contract typically does not require injunctive relief. *See, e.g.*, *Borey*, 934 F.2d at 34.

3

**GOODWIN**

July 29, 2024
Page 4

The remaining relief Plaintiff now seeks should be denied for the same reasons that its first emergency motion was denied just six weeks ago.

    **B.    Plaintiff cannot show a likelihood of success given SAFE's representations and because the remaining information Plaintiff seeks to capture is publicly available**

Because SAFE agrees to not access Plaintiff's portal and to sequester any "digital footprints" downloaded from that portal, any risk even potentially posed to Plaintiff (a dubious proposition) is moot. Therefore, Plaintiff cannot show any likelihood of success required for emergency relief. *See Do The Hustle, LLC v. Rogovich*, No. 03-cv-3870-VM, 2003 WL 21436215, at *7 (S.D.N.Y. June 19, 2003) (party assurances of refraining from challenged conduct mooted harm); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 524-25 (S.D.N.Y. 2009) (same).

What remains, and what SAFE will not agree to, is Plaintiff's request that the Court enjoin use and disclosure of an unidentified set of information, including information contained within the "digital footprint" documents.[4] Plaintiff has failed to make a showing of likelihood of success as it concerns this information, which also cannot be the subject of an injunction under Rule 65(d).

It is telling that despite filing over 2,000 pages with the Court, Plaintiff did not include a single "digital footprint" document, even while Plaintiff seeks relief covering these "digital footprints," among other things. Obviously, SAFE is disadvantaged by having to address the subject matter of documents it has never seen (and over just a few weekend days).

Nonetheless, it is apparent why Plaintiff elected to withhold its "digital footprints" from its otherwise voluminous filing. That is because the information within these documents is publicly available and not confidential. Plaintiff's so-called "digital footprints" are described extensively on Plaintiff's website. *See, e.g.*, SecurityScorecard, [Manage and validate your Digital Footprint – Help Center (securityscorecard.com)](#). Indeed, Plaintiff even created an instructional video freely available on YouTube giving a demo about its "digital footprint." *See, e.g.*, SecurityScorecard, [Digital Footprint 2.0 Demo (youtube.com)](#). Plaintiff readily admits that these "digital footprints" are compilations of, or derived from, publicly available information (ECF No. 78-1 at 4:23-7:25), including by acknowledging that the reports contain "impressions of the internet every day." *See* ECF No. 73 at 2; *see also* ECF No. 1-1 at 2 (Plaintiff's User Agreement explaining that Plaintiff's services are provided "***using solely*** outside-in, ***publicly available data*** that is collected and ultimately displayed in our [user interface] via our proprietary technology" and "[t]he cybersecurity ratings provided by the Services ***are based only on information from publicly available sources***") (emphasis added). Meanwhile, Plaintiff offers the

---

[4] To be clear, SAFE agrees to sequester (and therefore not use or disclose) the actual "digital footprint" documents downloaded from the SSC platform, but it does not agree to refrain from using or disclosing any information contained in those documents.



July 29, 2024
Page 5

information in its digital footprints *for free to anyone* who signs up.  *See* ECF No. 73 at 3-4; ECF No. 13 ¶¶ 4-5.

With this in mind, it is clear that an injunction cannot cover all information in Plaintiff's "digital footprint" documents, because they contain publicly available information and information that Plaintiff itself makes publicly available.  *See Probo Med., LLC v. Heart Med., LLC*, No. 24-cv-0433-BAS-VET, 2024 U.S. Dist. LEXIS 132615, at *11 (S.D. Cal. July 26, 2024) (denying preliminary injunction with respect to alleged confidential information because "[s]ignificant amounts, if not almost all, of the information Plaintiff seeks to protect would not be considered trade secret"); *see also 24 Seven, LLC v. Martinez*, No. 19-cv-7320-VSB, 2021 U.S. Dist. LEXIS 15480, at * 21-22 (S.D.N.Y. Jan. 26, 2021) (dismissing claim because "[a]s courts in this Circuit have recognized, such openly communicated information does not warrant trade secret protection") (collecting cases).  The onus is on a plaintiff to (attempt to) identify specific confidential information from public information.  *See Probo Med.*, 2024 U.S. Dist. LEXIS 132615, at *11 ("Courts require precision in defining trade secrets for the purposes of a preliminary injunction because 'the district court or trier of fact will not have the requisite expertise to define what the plaintiff leaves abstract.'").  Here, Plaintiff has not done so.

    **C.**    **Plaintiff cannot demonstrate any irreparable harm, "the single most important prerequisite for the issuance of a preliminary injunction"**

Plaintiff's emergency request also fails because it does not identify any actual, imminent irreparable harm.  This deficiency is reason to deny preliminary relief in any case, and particularly on a breach of contract claim because injunctive relief is uncommon and disfavored in contract cases.  *See, e.g.*, *Borey*, 934 F.2d at 34; *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491 (S.D.N.Y. 1989) (denying preliminary injunction because "[o]rdinarily, the innocent party to a breached contract is entitled only to compensatory damages obtainable in an action at law," not specific performance) (citing *Litho Prestige v. News Am. Publ'g, Inc.*, 652 F. Supp. 804, 809 (S.D.N.Y. 1986) (denying preliminary injunction because no irreparable harm was established and explaining that specific performance is rarely appropriate in a contract case)).

Like in Plaintiff's first emergency motion, Plaintiff again relies only on a speculative and attenuated chain of possibilities.  Plaintiff posits that SAFE may (1) learn about Plaintiff's offerings, (2) leverage that publicly available information, (3) to somehow improve SAFE's own offerings, and (4) theoretically attract customers away from Plaintiff.  *See* ECF No. 73 at 17.  This does not show any imminent irreparable harm.  Indeed, Plaintiff provides no specifics on how SAFE could even use publicly available information to improve its offerings, much less in a way that harms Plaintiff.  Plaintiff's theory of harm is beyond speculative; it is intentionally vague to prevent SAFE from meaningfully rebutting it.  The law, however, does not place the onus on SAFE to rebut speculative hypotheticals.  The onus is on Plaintiff to set forth actual, imminent irreparable harm, not speculation.  *See EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 308 (S.D.N.Y. 1999) ("If irreparable harm is remote,

Case 1:24-cv-04240-ER   Document 79   Filed 07/29/24   Page 6 of 8



July 29, 2024
Page 6

speculative, or a mere possibility, the motion [for preliminary injunction] must be denied.") (citing cases). Plaintiff has not done so, and its motion should be denied. *See id.*

It is also telling that Plaintiff dedicates its sparse irreparable harm discussion to arguing what it "need not demonstrate" instead of trying to show actual irreparable harm. ECF No. 73 at 16. As noted, Plaintiff actually has demonstrated nothing. And the cases Plaintiff cites in support of its argument about what it "need not demonstrate" are inapposite. *Muze* concerned proprietary software (*see Muze, Inc. v. Digital On-Demand, Inc.*, 123 F. Supp. 2d 118, 121 (S.D.N.Y. 2000)), a far cry from Plaintiff's motion which concerns public information it gives away to the masses free of charge. In *Broker Genius*, the plaintiff actually identified "five to ten clients" that switched from the plaintiff's offering to the defendants' offering. *See Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 495 (S.D.N.Y. 2018). Here, Plaintiff identified no customers that left it for SAFE. *Register* acknowledged that "specific relief is not the conventional remedy for breach of contract" but found it appropriate because there was actual evidence that the defendant had personally contacted the plaintiff's customers "by electronic mail, telephone calls, or direct mail" to solicit business. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 395, 404 (2d Cir. 2004*)*. SAFE has done no such thing. *Complex* concerned a permanent injunction after liability was proven. *See Complex Sys., Inc. v. ABN AMRO Bank N.V.*, No. 08-cv-7497 KBF, 2014 WL 1883474, at *1 (S.D.N.Y. May 9, 2014).

>    D.      **Rule 65(d) and Second Circuit law prohibit relief that restricts use of or access to unidentified "confidential information"**

The order Plaintiff seeks also cannot be entered because it would violate Federal Rule of Civil Procedure 65(d). The relief sought—enjoining SAFE from "disclosing or using" an undefined set of "Confidential Information" from SSC's platform—is impermissibly vague. Like the relief sought by Plaintiff in its original emergency motion, the relief sought here would be an unbounded restriction on SAFE's use of unspecified and undefined set of information. That is facially improper.

Rule 65(d) requires that "[e]very order granting an injunction . . . must . . . state its terms specifically" and must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). "Rule 65(d) reflects Congress' concern with the dangers inherent in the threat of a contempt citation for violation of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds." *Sanders v. Air Line Pilots Ass'n*, 473 F.2d 244, 247 (2d Cir. 1972). Thus, where requested relief is vague or undefined, an injunction must be denied. *See ExpertConnect, LLC v. Parmar*, 773 F. App'x 651, 653 (2d Cir. 2019); *IDG USA, LLC v. Schupp*, 416 F. App'x 86, 88 (2d Cir. 2011); *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004). Accordingly, an injunction must make clear, "from the four corners of the order precisely what acts are forbidden." *Corning*, 365 F.3d at 158.

6



July 29, 2024
Page 7

Complying with Rule 65(d) is not some academic exercise. It is a critical requirement, which if flouted causes serious real-world harm. As the Second Circuit explained long ago in *Sanders*, an open-ended or unclear injunction creates a risk that "an enjoined party may unwittingly and unintentionally transcend its bounds." *Sanders*, 473 F.2d at 247. The flip side of this concern is that a cautious litigant, eager to avoid contempt, will be unnecessarily cautious, forgoing lawful activities for concern that they could, arguably, be declared violations of an unclear or unbounded order.

To be sure, the dangers of a vague order are well recognized. As the Supreme Court explained:

> [T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood. Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.

*Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (citations omitted). And this effect is especially pronounced where, as here, the party seeking relief has a pattern of over-aggressive litigation conduct, and has made repeated reference to its eagerness to move for contempt. *See* ECF No. 78-1 (June 13, 2024 H'rg Tr.) at 54:4-20 (Plaintiff's counsel arguing about potential need to move for contempt).

Plaintiff specifically seeks to restrict use and disclosure of an undefined set of "Confidential Information." Without identifying what this confidential information is, and without differentiating it from publicly available information, this relief does not make clear "from the four corners of the order precisely what acts are forbidden." *Corning*, 365 F.3d at 158. As the Second Circuit succinctly put it in reversing such an unbounded injunction, "[a]n injunction that simply prohibits the disclosure of trade secrets or confidential information, with no additional description of what secrets or confidential information are to be protected, is insufficiently specific to satisfy Rule 65(d)." *IDG USA*, 416 F. App'x at 88.

The Court should accordingly deny the remaining relief Plaintiff seeks because it does not comply with Rule 65(d)'s specificity requirement, as courts repeatedly have done when faced with such an order applying to a set of "confidential information." *See, e.g.*, *id.*; *ExpertConnect*, 773 F. App'x at 653 ("Under Rule 65(d) . . . an injunction that prohibits the use or disclosure of trade secrets or confidential information must . . . specifically describe the nature of the secrets or confidential information to be protected."); *Corning*, 365 F.3d at 158 ("The preliminary injunction entered by the district court does not identify the trade secrets . . . that it bars PicVue from . . . misappropriating . . . .").

<div style="text-align:center">*     *     *</div>



July 29, 2024
Page 8


The Court should deny the motion brought by Plaintiff. Should there be any doubt that Plaintiff's motion should be denied, SAFE requests the opportunity to brief Plaintiff's motion for preliminary relief on a standard briefing schedule.


Respectfully submitted,

*/s/ Neel Chatterjee*_____
Neel Chatterjee

cc: All counsel of record via ECF