

John P. Padro
+1 212 459 7349
JPadro@goodwinlaw.com

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

goodwinlaw.com
+1 212 813 8800

August 26, 2024

**VIA ECF**

Hon. Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re**:     *SecurityScorecard, Inc. v. Safe Securities, Inc.*, **Case No. 1:24-cv-04240-ER**

Dear Judge Ramos:

We write on behalf of Defendant Safe Securities, Inc. ("SAFE") in response to Plaintiff SecurityScorecard, Inc.'s ("SSC") "status report" to the Court (ECF No. 107).

At the August 13, 2024 hearing, the Court instructed the parties to (1) "submit a proposed or an amended stipulation and order which incorporates the representations that have been made on the record here today by Mr. Padro, and to report back after the disclosure for the production of the footprints as to whether or not there is further ground for agreement"; and (2) engage in the 26(f) conference. ECF No. 102 ("Aug. 13 Hr'g Tr.") at 40:11-17; *id.* at 53:14-15. Unfortunately, SSC has chosen not to comply with the Court's directive.

Instead, SSC submitted a "status report" beyond what the parties were instructed to provide. It also misrepresents the discussions between the parties and suggests there are impasses on issues that SSC has yet to respond to let alone confer with SAFE on. Critically, SSC fails to fully apprise the Court that the representations it made about the materials it agreed to produce after the hearing (the digital footprints and questionnaires) were incomplete. Last Thursday, SSC admitted, despite the extensive discussions and briefing, that it does not have copies of the allegedly accessed materials. Ex. A at 7. To compound matters, SSC has not agreed to provide SAFE further documentation on the allegedly accessed materials, including a clear listing of accurate information and metadata associated with the allegedly accessed materials that SSC has in its possession, so that SAFE can investigate those documents. *Id.* at 1.

Given this substantial departure from the process discussed before, during and after the hearing, the parties have not come to any further agreement on the stipulation beyond what was agreed to at the hearing because there is no technical way to search for documents SSC cannot provide. Specifically, to search for a particular document in eDiscovery, a party must obtain the exact document it is searching for and then the document is converted into what is referred to as a "hash value." That hash value is then used to search



August 26, 2024
Page 2

for any electronic evidence with the same hash value.  Any change to the document will create a different hash value, and, therefore, does not allow for a search of the same document.  Consequently, SSC's failure to identify the exact documents it claims were purloined creates a practical and logistical challenge in locating the allegedly accessed materials.

This does not mean the parties are not moving forward with discovery or attempting to address the issues raised at the hearing.  As explained below, SAFE has agreed to move forward with targeted discovery related to the footprints and templates on an accelerated schedule while SAFE's forthcoming motion to dismiss remains unresolved, and will inform SSC of that progress by September 6, 2024. *See* Ex. A at 3; Ex. A-1.

In contrast, SSC continues to pursue the same vague and speculative remedies that were already rejected by the Court as legally deficient. Aug. 13 H'rg Tr. at 40:11-12.  At the same time, SSC has refused to provide further information needed for SAFE's investigation.  The Court should again deny SSC's requests and continue to allow the parties to confer and identify the specific disputed issues for the Court (if any).

**<u>Stipulation and Proposed Order</u>**

As represented to the Court at the August 13 hearing, SAFE would agree to the first clause of SSC's Proposed Order if SSC replaced the undefined and improper "confidential information" language with "digital footprints and questionnaires."  Aug. 13 H'rg Tr. at 36:16-21; *id.* at 41:20-42:3.  SAFE sent SSC a draft stipulation and proposed order containing the exact representations that were agreed to at the hearing, which SSC refused to sign and submit to the Court.  *See* Ex. A at 3; Ex. A-1.  SSC refused to do so because there was no agreement on the second clause.  *See* Ex. A at 1.  SSC also refused to submit a joint letter to the Court on these issues.  *Id.*

As for the second clause, SSC's proposed order (ECF. No. 107-1) still incorporates the same type of language in the second clause of SSC's Proposed Order that the Court declined to order at the August 13 hearing (Aug. 13 H'rg Tr. at 40:11-12), specifically, that SAFE be "mandated to remediate from SAFE's products and offerings any content based upon, reflecting or utilizing in any way, to the extent there has been such use, any digital footprints and questionnaire templates obtained from SSC's customer platform." Not only is this language impermissible vague as to what must be done, or with regard to what products or information, but it also still lacks any evidentiary basis.  Given these same defects, as the parties discussed at the hearing, following SAFE's receipt of the "digital footprints" from SSC, SAFE would need to investigate whether its employees "did access this information, did receive this information, and presumably, therefore, used the information" and then determine "whether there would be some further agreement."  Aug. 13 H'rg Tr. at 40:7-10.



August 26, 2024
Page 3

Those discussions remain inconclusive and have been complicated by SSC's shifting positions since the hearing.  Last Monday, SSC produced 92 documents (however, SAFE was not able to access them until Tuesday due to a technical issue with SSC's production).  *See* Ex. A at 9-13.  The metadata indicates that all of these documents were generated on August 17 and 18, 2024, not on the dates allegedly accessed. *Id.* at 8.  When SAFE requested that SSC provide forensically sound copies of the exact documents it alleges were accessed or downloaded in order for SAFE to conduct a complete and accurate search, SSC informed SAFE for the first time on August 22 that SSC does not have copies of the exact documents at issue, and could only provide updated versions of these documents – versions which undisputedly have not been accessed or downloaded by SAFE.  *Id.* at 7.  Moreover, SSC confirmed that these documents are likely to differ from the accessed files in content, rendering the search for these materials substantially more difficult.  *Id.*

Critically, SSC did not raise this issue with SAFE or the Court at or after the August 13 hearing.  Indeed, even during the last Monday's meet-and-confer, the parties explicitly discussed the need to receive exact copies of the allegedly accessed materials in order to conduct the accelerated discovery required here. SSC made no mention of the fact that this would not be possible during that discussion.

Notwithstanding SSC's backtracking, SAFE reiterated its commitment to investigating alternative manners to search, and agreed to provide SSC with an update as to the results of SAFE's investigation by September 6, 2024, and continue to engage in a dialogue as to further language for a proposed order regarding remediation, if needed.  Ex. A at 3.  To assist that effort, SAFE also requested that SSC provide more information on the exact materials that were allegedly accessed – specifically, the file names, and any fields within the files that remain static and could be shared with the client and used to conduct the search.  *Id.*  SSC has not agreed to provide the requested information, further hindering SAFE's ability to search for and investigate any use of the allegedly accessed materials.  *Id.* at 2.  This information is particularly important because much of SSC's information is publicly shared through YouTube videos and its website, and publicly derived from scans of the internet.  Distinguishing the confidential information not available through public sources is critical for SAFE to investigate and, if necessary, remediate.

Because SSC's current proposed language on "remediation" remains unsupported and undefined as to what exactly it means to remediate, let alone what is to be done.  It thus remains legally unsupported as well as improper under Federal Rule of Civil Procedure 65(d).  Thus, SAFE respectfully requests that the Court enter the proposed order that was agreed to by the parties and the Court at the August 13 hearing, attached hereto as **Exhibit B**.  SSC and SAFE will continue to meet-and-confer on language for a proposed order regarding "remediation," if any is needed, following SAFE's investigation on September 6, 2024.



August 26, 2024
Page 4

**Rule 26(f) Conference**

The Court did not order the parties to provide a scheduling order by Friday, but instead ordered the parties to conduct a Rule 26(f) conference. Aug. 13 H'rg Tr. at 53:14-15. As SSC concedes, the parties did so on August 19, and have been exchanging proposals on the schedule and scope of discovery. *See* ECF No. 107. Nor has there been any delay, as SAFE responded to SSC's initial scheduling and discovery proposal just 4 days later. *See* Ex. C at 1. Rather than respond to SAFE's email and proposal or engage with SAFE in the standard meet-and-confer process, SSC directly submitted its letter to the Court. The parties' discussions as to the schedule are ongoing, and any issues raised by SSC with respect to scheduling are premature.

SAFE raised two proposals in its email to SSC, both intended to streamline the discovery process and case schedule in light of SSC's incomplete pleadings and SAFE's pending motion to dismiss SSC's speculative claims.

*First*, SSC's asserted a document production deadline only for SAFE and did not agree to produce documents itself. Moreover, SAFE noted that a **substantial** production deadline within 30 days of responding to requests (October 25, 2024) was not practical for all discovery, especially where neither party has served its operative document requests yet, and there will likely be disputes as to scope given that SSC intends to amend its complaint. *See* Ex. C at 1. As a compromise and in an effort to move discovery forward, SAFE proposed that the parties prioritize 10 document requests for which document productions will be served by October 25, 2024, so that SSC can obtain the critical discovery it apparently requires in order to amend its complaint. *Id.* SSC refused to even consider this proposal and just submitted its proposal to the Court without conferring with SAFE or requesting an informal conference with the Court. *See* L.R. 37.2

*Second*, SAFE proposed that the parties confer as to the appropriate scope of discovery into the allegations stemming from Mary Polyakova's conduct, as Ms. Polyakova is subject to arbitration and the case has been stayed against her, and SSC has indicated that it does not intend to initiate an arbitration against her. *See* Ex. C at 1. While these issues should be stayed pending coordination with Ms. Polyakova given her key role in SSC's allegations, SAFE also asked to discuss if there was targeted discovery on these issues that could be provided to assess the real need to pursue these claims given that SAFE had no awareness of the documents Ms. Polyakova inadvertently retained before the Complaint was filed. *See* ECF No. 32. Once again, SSC was unwilling to discuss prioritizing or streamlining discovery in any form.

SAFE respectfully requests that the Court reject SSC's unilateral proposal regarding scheduling, and allow the parties to properly meet-and-confer on the Scheduling Order and submit their proposal to the Court on September 6, 2024.



August 26, 2024
Page 5

Respectfully submitted,

*/s/ John Padro*
John P. Padro

cc: All counsel of record via ECF