# EXHIBIT B

# EMPLOYEE'S PROPRIETARY INFORMATION AND

# INVENTIONS AND NON-COMPETITION AGREEMENT

As an employee of SecurityScorecard, Inc. (the "Company"), I recognize that the Company is engaged in a continuous program of research, development and production with respect to its business.

RECITALS:

I understand that:

A.     Definitions for certain of the capitalized terms used in this Employee's Proprietary Information and Inventions and Non-Competition Agreement ("Agreement") are contained in <u>Exhibit A</u> attached to this Agreement.

B.     The Company possesses and will continue to possess Proprietary Information.  In consideration for the compensation received by me from the Company, I hereby agree as follows:

1.     <u>Protection of Proprietary Information</u>.

(a)  <u>Property of the Company</u>.  All Proprietary Information shall be the sole property of the Company and its assigns or a third party, as applicable, and the Company and its assigns or such third party shall be the sole owner of all patents and other rights in connection with such Proprietary Information.  I hereby assign to the Company any rights I may have or acquire in any or all Proprietary Information.  During the term of my employment by the Company and at all times thereafter, I will keep in confidence and trust all Proprietary Information, and I will not directly or indirectly disclose, sell, use, lecture upon or publish any Proprietary Information or anything relating to it without the prior written consent of the Company, except as may be necessary in the ordinary course of performing my duties as an employee of the Company and except as required by law (subject to providing the Company with an opportunity to seek a protective order or other such remedy).  I will obtain the Company's written approval before publishing or submitting for publication any material that relates to my work at the Company or incorporates any Proprietary Information.

(b)  <u>Property of Third Parties</u>.  I recognize that the Company has received and in the future will receive information from third parties which is private or proprietary information, subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.  I agree, during the term of my employment and thereafter, to hold all such private or proprietary information received from third parties in the strictest confidence and not to disclose or use it, except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party and except as required by law (subject to providing the Company with an opportunity to seek a protective order or other such remedy).

My obligations regarding Proprietary Information shall continue until such time as the Proprietary Information is publicly known without fault on my own part.

2.     <u>Avoid Conflict of Interest</u>.  During the course of my employment, I shall inform the Company before accepting any employment, consulting or other relationship with another person or entity (a) in any field related to the Company's line of business or (b) in a position that requires a significant time commitment.  Lack of objection by the Company regarding any particular outside activity does not in any way reduce my obligations under this Agreement.

DocuSign Envelope ID: 2FDE8F95-B9F7-49AF-8F80-D39EFFD4D8DA

3.  <u>Return of Materials</u>.  All apparatus, computers, computer files and media, data, documents, drawings, engineering log books, equipment, inventor notebooks, programs, prototypes, records, samples, equipment and other information and physical property, whether or not pertaining to Proprietary Information, furnished to me by the Company, or produced by myself or others in connection with my employment, shall be and remain the sole property of the Company and shall be returned promptly to the Company as and when requested by the Company.  Should the Company not so request, I shall return and deliver all such property upon termination of my employment for any reason and I will not take with me any such property or any reproduction of such property upon such termination.  I further agree that any property situated on the Company's premises and owned by the Company, including computers, computer files, e-mail, voicemail, disks and other electronic storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice.

4.  <u>Non-Solicitation, Non-Compete and Non-Disparagement</u>.

    (a)  <u>Non-Solicitation</u>. I agree that, during the period of my employment and for a period of two (2) years following termination of my employment with the Company for any reason, I will not directly or indirectly (a) solicit or in any manner encourage employees, officers, directors, affiliates or consultants of the Company to end their relationships with the Company; or (b) other than on behalf of the Company, call on, solicit or take away, or attempt to do any of the same, the business of any business partners or other associates of the Company with whom the Company had relationships or with whom I was otherwise acquainted during the term of my employment.  By signing this Agreement, I acknowledge and agree that the names, addresses and specifications of the Company's business partners and other associates constitute Proprietary Information and that the sale or unauthorized use or disclosure of this or any other Proprietary Information that I obtained during the course of this Agreement would constitute unfair competition with the Company.  I promise not to engage in any unfair competition with the Company either during the term of my employment or at any time thereafter.

    (b)  <u>Non-Compete</u>. I agree that, during my employment and for a period of two (2) years following the termination of my employment with the Company for any reason, I will not, directly or indirectly, own, manage, operate, control or participate in the ownership, management or control of, or be connected as an officer, employee, partner, director, consultant or otherwise with, or have any financial interest in, or aid or assist anyone else in the conduct of, any entity or business that competes with the Business during my employment and during the period of two (2) years following the termination of my employment) conducted by the Company or any of its subsidiaries or affiliates world-wide, within the United States or within any other area in which the Company conducts its Business on the date that my employment with the Company terminates.  I understand that the Business is conducted, in part, over the Internet and broadband networks and that therefore a broad geographical restriction is necessary as I would be able to compete effectively against the Company from any location in which I could access the Internet or broadband networks.  Notwithstanding the foregoing, my ownership of securities of a public company engaged in competition with the Company's Business not in excess of two percent (2%) of any class of such securities shall not be considered a breach of the covenants set forth in this Section. If, at the time of enforcement of this paragraph (b), an arbitrator shall hold that the duration, scope or area restrictions stated herein are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope or area reasonable under such circumstances shall be the substituted for the stated duration, scope or area and that the arbitrator shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by law.

    (c)  <u>Nondisparagement</u>.  The parties hereto agree that neither will make, or cause to be made, any statements, observations, or opinions, or communicate any information (whether oral or written), that disparages or is likely in any way to harm the reputation of the other.  Nothing contained in this Agreement shall be deemed to prohibit either party from testifying truthfully under oath pursuant to

any lawful court order or subpoena or otherwise responding to or providing disclosures required by law.

5. <u>Inventions</u>.  I will promptly disclose to the Company, or any persons designated by it, any and all Inventions; such disclosure shall continue for one (1) year after termination of my employment with respect to any and all Inventions made, conceived, reduced to practice or learned during such one (1) year term.  If any application for any United States or foreign patent related to or useful in the business of the Company or any customer or other business associate of the Company shall be filed by me or for me during the period of one (1) year after my employment is terminated, the subject matter covered by such application shall be presumed to have been conceived during my employment with the Company.

6. <u>Ownership and Protection of Inventions</u>.

(a) <u>The Company owns Inventions</u>.  I agree that any and all Inventions shall be the sole property of the Company and its assigns, and the Company and its assigns shall be the sole owner of all patents, trademarks, copyrights and other rights in connection with such Inventions.

(b) <u>Inventions Protection</u>.  I hereby assign to the Company any rights I may have or acquire in Inventions.  In addition, to the extent permitted by federal copyright law, the parties agree that any works resulting from my work under this Agreement shall be "works for hire" as defined in the federal copyright law.  I hereby assign to the Company all of my works of authorship and all rights of copyright, trademark, patent and other such rights ("Intellectual Property Rights") in such works to the extent such works result from my work under this Agreement.  I further agree, as to any and all Inventions, to assist the Company in every proper way (but at the Company's expense) to obtain and from time to time enforce Intellectual Property Rights on Inventions in any and all countries.  To that end, I will perform any further acts and execute and deliver all documents for use in applying for and obtaining such Intellectual Property Rights there-on and enforcing the same, as the Company may desire, together with any assignments of such protections to the Company or persons designated by it.  My obligation to assist the Company in obtaining and enforcing Intellectual Property Rights on Inventions in any and all countries shall continue beyond the termination of my employment, but, after such termination, the Company shall compensate me at the rate of US $80 per hour for time actually spent by me at the Company's request on such assistance.  I acknowledge that I may be unavailable when the Company needs to secure my signature for lawful and necessary documents required to apply for or execute any Intellectual Property Rights with respect to Inventions (including renewals, extensions, continuations, divisions or continuations in part of patent applications).  Therefore, I agree to irrevocably designate and appoint the Company and its duly authorized officers and agents, as my agents and attorneys-in-fact, to act for and in my behalf and instead of me, to execute and file any such application(s) and to do all other lawfully permitted acts to further the prosecution and issuance of patents, copyrights, trademarks and other protections on Inventions with the same legal force and effect as if executed by me.  The Company shall also have the right to keep any and all Inventions as trade secrets.  I hereby waive and quitclaim to the Company Intellectual Property Rights.  Any and all claims of any nature whatsoever, which I now or may hereafter have for infringement of Intellectual Property Rights are assigned hereunder to the Company.

(c) <u>Inventions Assigned to the United States</u>.  I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d) <u>Maintenance of Records</u>.  I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company.  The records will be in the form of notes, sketches, drawings, and any other format that may

DocuSign Envelope ID: 2FDE8F9F-8DF7-456F-8F80-B129FEDA9BDA

be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

7. <u>List of Pre-Employment Inventions</u>. I have attached to this Agreement as <u>Exhibit B</u> a complete list of all developments, discoveries, improvements, inventions, trade secrets, or technical or journal writings or other works of authorship which I have made or conceived or first reduced to practice alone or jointly with others prior to my engagement by the Company which are not subject to a confidentiality agreement that would bar such listing (collectively "Pre-Employment Inventions"); and I covenant that such list is complete. If no such list is attached to this Agreement, I represent that I have made no such Pre-Employment Inventions at the time of signing this Agreement. The Company will not require me to assign any rights I may have in any of the listed Pre-Employment Inventions. Furthermore, the listed Pre-Employment Inventions will not be classified as Proprietary Information or Inventions. If in the course of my employment with the Company, I incorporate into a Company product, process or machine a Pre-Employment Invention or any other inventions, technical writings, papers, journal articles, developments, improvements, and trade secrets which were made by me prior to my employment with the Company, which are owned by me or in which I have an exclusive interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide, transferable and sublicensable license to make, have made, modify, use and sell such Pre-Employment Invention as part of or in connection with such product, process or machine. I acknowledge and agree that the Company and its subsidiaries or affiliates are free to compete or develop information, inventions and products within the areas and type of the Pre-Employment Inventions.

8. <u>No Conflicting Obligation</u>. I represent that my performance of all the terms of this Agreement and that my employment by the Company does not and will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict with this Agreement. I also understand that I am not to breach any obligation of confidentiality I have to others during my employment with the Company.

9. <u>No Improper Use of Information of Prior Employers or Others</u>. As part of the consideration for the offer of employment by the Company and of my employment or continued employment by the Company, I have not brought and will not bring to the Company, or use or disclose in the performance of my responsibilities any equipment, supplies, facility, electronic media, software, trade secret or other information or property of any former employer or any other person or entity which are not generally available to the public, unless I have obtained their written authorization for its possession and use.

10. <u>Notification of New Employer</u>. In the event that I leave the employ of the Company, I hereby consent to the notification of my new employer of my rights and obligations under this Agreement.

11. <u>Binding Arbitration</u>. I agree that any dispute arising out of or related to the employment relationship between me and the Company, including the breach of this Agreement or the termination of the employment relationship, and any allegations of unfair or discriminatory treatment arising under state or federal law or otherwise, shall be resolved in accordance with the terms of the Company's Arbitration Agreement which is incorporated into this Agreement.

12. <u>Modifications</u>. No modification of this Agreement shall be valid unless made in writing and signed by the parties hereto.

13. <u>Severability</u>. If any term or provision of the Agreement shall be declared invalid, illegal or unenforceable, such term or provision shall be amended to achieve as nearly as possible the same effect of protecting Proprietary Information as the original term or provision, and all remaining provisions shall continue in full force and effect.

14. <u>Survival of Obligations</u>.  This Agreement shall survive termination of my employment, regardless of the circumstances of such termination.

15. <u>Effective Date; Term of Agreement</u>.  This Agreement shall be effective as of the first day of my employment by the Company and shall continue for five (5) years following the termination of my service with the Company for any reason (except for the provisions of Section 1, 4(c) and 6, which shall continue without limitation.

16. <u>Binding Effect</u>.  This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives and shall inure to the benefit of successors and assigns of the Company.

17. <u>Integrated Agreement</u>.  This Agreement and the employment offer letter executed between the Company and me constitute the full, complete and exclusive agreement between the Company and me with regard to their subject matter.  These Agreements supersede any previous agreements or representations, whether oral or written, express or implied between the Company and me with respect to their subject matter.  To the extent this Agreement and the employment offer letter conflict, the employment offer letter shall control.  These Agreements shall not be modified unless in writing, signed by me and the CEO or President of the Company.

18. <u>Exhibits</u>.  The following Exhibits are made a part of and incorporated by reference in this Agreement:

Exhibit A:   Definitions

Exhibit B:   List of Pre-Employment Inventions

Exhibit C:   Arbitration Agreement

19. <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

20. <u>Acknowledgement</u>.  I certify and acknowledge that I have carefully read all of the provisions of this Agreement and that I under-stand and will fully and faithfully comply with such provisions.

Dated:  2/8/2020

ACCEPTED AND AGREED TO BY:

SecurityScorecard, Inc.

Employee Signature:

822950A111E2401...

Title : Field Sales Director

Address:   Mary Polyakova

By :_____

Name: Aleksandr Yampolskiy

Title: CEO

# EXHIBIT A

1.     <u>DEFINITIONS</u>. As used in the foregoing Agreement, the following terms shall have the meanings as defined below. Where the context so indicates, a word in the singular form shall include the plural and vice-versa.

    1.1     *Company* as used herein, shall include any subsidiary or affiliate of the Company.

    1.2     "Business" means companies/competitors (or departments/subsidiaries/affiliates of same) in the security rating space, including but not limited to Bitsight, Riskrecon, Upguard, Normshield, and Fico, or companies in vendor risk management space, including but not limited to Cybergrx and Prevalent.

    1.3     *Inventions* means all data, discoveries, designs, developments, formulae, ideas, improvements, inventions, know-how, processes, programs, and techniques, whether or not patentable or registrable under copyright, trademark or similar statutes, and all designs, trademarks and copyrightable works that I made or conceived or reduced to practice or learned, either alone or jointly with others, during the period of my employment which (a) are related or useful in the business of the Company or to the Company's actual or demonstrably anticipated research, design, development, experimental production, financing, manufacturing, licensing, distribution or marketing activity carried on by the Company, or (b) result from tasks assigned me by the Company, or (c) result from use of premises or equipment owned, leased or contracted for by the Company.

    1.4     *Proprietary Information* shall mean information that has been created, discovered or developed, or has otherwise become known to the Company (including without limitation information created, discovered, developed or made known by or to me during the period of or arising out of my employment by the Company), and/or in which property rights have been assigned or otherwise conveyed to the Company, which information has commercial value in the business in which the Company is engaged. By way of illustration but not limitation, "Proprietary Information" includes: (a) inventions, confidential knowledge, trade secrets, ideas, data, programs, works of authorship, know-how, improvements, discoveries, designs, techniques and sensitive information the Company receives from its customers or receives from a third party under obligation to keep confidential; (b) technical information relating to the Company's existing and future products, including, where appropriate and without limitation, manufacturing techniques and procedures, production controls, software, firmware, information, patent disclosures, patent applications, development or experimental work, formulae, engineering or test data, product specification and part lists, names of suppliers, structures, models, techniques, processes and apparatus relating to the same disclosed by the Company to me or obtained by me through observation or examination of information or developments; (c) confidential marketing information (including without limitation marketing strategies, customer names and requirements and product and services, prices, margins and costs); (d) confidential future product plans; (e) confidential financial information provided to me by the Company; (f) personnel information (including without limitation employee compensation); and (g) other confidential business information.

Updated 5/1/19

## EXHIBIT B

## LIST OF PRE-EMPLOYMENT INVENTIONS

This List of Pre-Employment Inventions, along with any attached pages, is part of and incorporated by reference into the attached EMPLOYEE'S PROPRIETARY INFORMATION AND INVENTIONS AND NON-COMPETITION AGREEMENT.

The following is a complete list of all developments, discoveries, improvements, inventions, trade secrets and works of authorship which I have made or conceived or first reduced to practice alone or jointly with others prior to my engagement by the Company which are not subject to a confidentiality agreement that would bar such listing (collectively "Pre-Employment Inventions"). I understand that the Company will not require me to assign any rights I may have in any of the listed Pre-Employment Inventions. I further understand that the listed Pre-Employment Inventions will not be classified as Proprietary Information or Inventions. I represent that this list of Pre-Employment Inventions is complete.

☐ No Pre-Employment Inventions to report.

☐ See below.

☐ Additional sheets attached.

Mary Polyakova
_____
Print Employee Full Name

2/8/2020
_____
Date

B-1

# ARBITRATION AGREEMENT

1. To the maximum extent permitted by law, I, _____Mary Polyakova_____, and SecurityScorecard, Inc., a Delaware corporation (the "Company"), agree that, except as noted below, any controversy, claim or dispute arising out of or related to my employment or the termination thereof ("claims") shall be arbitrated in accordance with the following procedure:

(a)     Any and all claims shall be submitted to final and binding arbitration before the American Arbitration Association ("AAA") in New York City, New York.  Such arbitration shall be in accordance with the AAA's then current version of the National Rules for the Resolution of Employment Disputes.  The arbitrator shall be selected in accordance with the AAA's selection procedures in effect at the time.  Either party may initiate arbitration proceedings by filing a demand for arbitration with the AAA in New York City, New York.

(b)     The arbitrator shall have the authority to grant any relief authorized by law.

(c)     The arbitrator shall have exclusive authority to resolve all claims covered by this arbitration agreement, and any dispute relating to the interpretation, applicability, enforceability or formation of this arbitration agreement, including, but not limited to, any claim that all or any part of this arbitration agreement is void or voidable.  Any issues involving the arbitrability of a dispute shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

(d)     All fees and expenses relating to any arbitration (including, without limitation, the reasonable legal fees and expenses of the prevailing party and expert witness fees) arising pursuant hereto shall be paid by the non-prevailing party, and the arbitrator shall include an award of such amounts in its decision.

(e)     The claims covered by the above include, but are not limited to, claims for wrongful termination, unpaid wages or compensation, breach of contract, torts, violation of public policy, claims for harassment or discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, medical condition, disability, or sexual orientation), claims for benefits (except where an employee benefit or pension plan specifies a procedure for resolving claims different from this one), claims for physical or mental harm or distress, or any other employment-related claims under any federal, state or other governmental law, statute, regulation or ordinance, including, but not limited to, Title VII of the Civil Rights Act of 1965, the Americans With Disabilities Act, the Age Discrimination in Employment Act, and any other statutes or laws relating to an employee's relationship with the employer, and claims related to the Employee's Proprietary Information and Inventions and Non-Competition Agreement executed by me a copy of which is attached hereto.  However, claims for workers' compensation benefits and unemployment compensation benefits are not covered by this arbitration agreement, and such claims may be presented to the appropriate court or government agency.

(f)     Notwithstanding this agreement to arbitrate, neither party waives the right to seek through judicial process, preliminary injunctive relief to preserve the status quo or prevent irreparable injury before the matter can be heard in arbitration.

(g)     The arbitrator shall issue a written arbitration decision stating the arbitrator's essential findings and conclusions upon which any award is based.  A party's right for review of the decision is limited to grounds provided under applicable law.

(h)     The parties agree that the arbitration shall be final and binding and any arbitration award shall be enforceable in any court having jurisdiction to enforce this arbitration agreement.

2.     BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH THE COMPANY AND I GIVE UP ALL RIGHTS TO TRIAL BY JURY, EXCEPT AS EXPRESSLY PROVIDED HEREIN.

3.     I agree that this agreement to arbitrate shall survive the termination of my employment.

4.     This is the complete agreement between me and the Company on the subject of arbitration of disputes.  This agreement supersedes any prior or contemporaneous oral or written understanding on the subject.  This agreement cannot be changed unless in writing, signed by me and the President or Chief Executive Officer of the Company.

AGREED TO AND ACCEPTED:

Dated:  2/8/2020

(Signature)

Mary Polyakova

(Print Employee Full Name)

Dated: _____

SecurityScorecard, Inc.

By :

Name: Aleksandr Yampolskiy

Title: CEO

2