# EXHIBIT K



April Sun
+1 415 733 6014
asun@goodwinlaw.com

Goodwin Procter LLP
3 Embarcadero Center
San Francisco, CA 94111

goodwinlaw.com
+1 415 733 6014

May 21, 2024

**VIA EMAIL(KENNETH.TABER@PILLSBURYLAW.COM)**

Kenneth W. Taber
Pillsbury Winthrop Shaw Pittman
31 West 52nd Street
New York, NY 10019-6131

**Re: Andrew Peck's Employment with SAFE Securities, Inc.**

Dear Mr. Taber:

As you know, Goodwin Procter LLP represents SAFE Securities, Inc. ("SAFE") in litigation matters. I write in response to your May 14, 2024 letter to current SAFE and former SecurityScorecard employee Andrew Peck and SAFE executives Saket Modi (Chief Executive Officer) and Naman Gupta (SVP, Finance and Legal).

As an initial matter, Mr. Peck has not retained any confidential or proprietary information belonging to SecurityScorecard, Inc. ("SecurityScorecard") and SAFE will ensure that no SecurityScorecard confidential or proprietary information is used or disclosed to SAFE in the course of Mr. Peck's employment. Mr. Peck has no interest or intent to obtain or utilize SecurityScorecard's confidential or proprietary information. As a matter of policy, SAFE requires each of its employees to sign and abide by a proprietary information agreement which specifically forbids the improper use or disclosure of any proprietary information of former employers or companies. As part of Mr. Peck's onboarding process with SAFE, Mr. Peck was instructed to continue to refrain from using or disclosing any SecurityScorecard confidential and proprietary information. SAFE endeavors to act with the highest degree of honesty and integrity and it certainly expects that its employees will do the same.

We have confirmed that Mr. Peck has returned all SecurityScorecard-issued equipment and has not otherwise retained any SecurityScorecard information or documents. SecurityScorecard has no factual basis to allege that Mr. Peck still has any SecurityScorecard confidential information.

Mr. Peck does not intend to solicit any SecurityScorecard customers or employees. Mr. Peck has been instructed by SAFE to abide by his post-termination non-solicitation obligations to SecurityScorecard.[1]

---

[1] By this letter, neither SAFE nor Mr. Peck concede or waive any defenses as to the enforceability of the post-termination restrictive covenant provisions in the Agreement should this matter lead to litigation.



Kenneth W. Taber
Page 2

The noncompetition provision of Mr. Peck's Employee's Proprietary Information and Inventions and Non-competition Agreement (the "Agreement") purporting to restrict him from working for any company "that competes with [SecurityScorecard]. . . . for a period of two (2) years following the termination of [Mr. Peck's] employment. . . . worldwide, within the United States or within any other area in which [SecurityScorecard] conducts its business. . . . any location in which [Mr. Peck] could access the internet or broadband network," is unenforceable against Mr. Peck for several reasons. New York courts have held that an employer has a legitimate interest in preventing (i) misappropriation of the employer's trade secrets or of confidential customer lists, (ii) competition by a former employee whose services are unique or extraordinary, and (iii) former employees from exploiting the goodwill of a client or customer which has been created and maintained at the company's expense, to the employer's competitive detriment" *BDO Seidman v Hirshberg*, 712 N.E.2d 1220 (N.Y. 1999).  As an initial matter, Mr. Peck's services as a mid-level sales employee are not unique or extraordinary nor is the job considered a learned profession.  Nor can SecurityScorecard demonstrate that Mr. Peck misappropriated or will misappropriate trade secrets or any  confidential information.  Even if SecurityScorecard's position is that Mr. Peck may have knowledge of certain information related to pricing or marketing of its product during his employment, New York courts have consistently held that absent any wrongdoing by the employee such as taking the former employer's confidential information, "knowledge of the intricacies of a business operation" and pricing and marketing strategies alone are generally not considered to be sufficient to justify enforcement of a noncompete, particularly where, as here, SecurityScorecard's noncompete is grossly over broad with respect to time and geographic region.  *Reed, Roberts Assoc. v. Strauman*, 353 N.E.2d 590, 594 (N.Y. 1976).  Any request by SecurityScorecard to enjoin Mr. Peck from being employed with SAFE is an extraordinary remedy that is not justified under the circumstances and unlikely to be granted by a court.  SAFE is prepared to defend any action brought based on unenforceable contractual provisions or overreaching interpretations of the law.

Mr. Peck is entitled to work in his chosen profession in an industry in which he has the most applicable experience and he will certainly be able to work at SAFE while continuing to honor his post-termination confidentiality and nonsolicitation obligations.  While Mr. Peck is in a sales role at SAFE, his job responsibilities do not require him to be customer-facing and he will not be working with any customers directly.  As stated above, SAFE does not want any SecurityScorecard's confidential information or trade secrets.

SAFE does not wish to compete unfairly with SecurityScorecard or to have access to any confidential or trade secret information belonging to SecurityScorecard.  As a good faith compromise and to avoid further escalation of this matter, we propose the following: (1) Mr. Peck will continue to comply with his post-termination obligation to not solicit any SecurityScorecard employees or customers for a period of two (2) years following his termination of employment with SecurityScorecard and (2) Mr. Peck will sign a certification confirming in writing that he has no confidential information belonging to SecurityScorecard in his possession and that he will not utilize any such information in his employment with SAFE. Provided that Mr. Peck provides the foregoing assurances, he will continue to be employed at SAFE, notwithstanding the parties' disagreement over the enforceability of the Agreement.



Kenneth W. Taber
Page 3

This letter is not intended to contain a complete statement of facts with respect to the subject matter hereof, and SAFE and Mr. Peck do not waive any legal or equitable rights, defenses or remedies available to them, all of which are expressly reserved.

Please contact me if you wish to discuss the foregoing.

Sincerely,

April Sun